which is Zhang versus Bondi. Mr. Yerman, am I pronouncing that right? Yes, sir. You've reserved one minute for rebuttal, so that gives you nine to start. Thank you. Several years ago, while I was doing oral argument in the Seventh Circuit before Judge Posner, I was coming back up for my rebuttal time. As I was walking up to the podium, the senior judge to Judge Posner's right looked at me and said, counsel, you're not going to try to talk him out of this, are you? So with that said, as luck has it, this court a few weeks ago in an unpublished decision with similar facts stated that the agency appears to have applied an incorrect standard by requiring the petitioner, my petitioner, to demonstrate that the government would likely learn of his religious activities rather than demonstrating that there is a reasonable possibility of that event. Number two, the IJ's decision lacks the foundation of substantial evidence, particularly because it offers no specific reason or detail, but merely provides a cursory and generalized conclusion, providing this court with no ability to do a meaningful review. Let me ask you about the standard question. The IJ referred to the lower standard, the lower burden of proof in referencing both claims. So that's some indication that the IJ understood that there were two different standards, one reasonable possibility and one likely. And the BIA specifically, in a cite to another case, referred to the reasonable possibility standard. So why should we conclude that both the IJ and the BIA misunderstood the standard under those circumstances? Well, first, because they never addressed it. They never discussed it in their decision. And you can't just lay out a cursory, conclusionary statement to be reviewed. No, if an IJ says you haven't met the lower burden, therefore you haven't met the higher burden in reference to both claims, isn't that an indication that the IJ understood that there were two different standards? Well, the IJ may have... What else would the IJ be referring to? The IJ may have understood that there's two standards. There's actually three. Asylum, withholding of removal, and protection under the Convention Against Torture. The likelihood of finding out is the standard for withholding of removal. That's the test that is applied. The test for asylum is a reasonable possibility. So knowing that there's two choices and articulating that the petitioner showed no reasonable possibility is an error. Let me ask you about the second part, about whether there was an explanation for rejecting the claim. If your client's only basis for believing that there's going to be future persecution is, they're going to find out about me because I'm going to preach in the streets. Is your position that that's enough? If someone just says, my plan is to preach in the streets, that they win? Well, Your Honor, I would say is there a motive and is there a means? And the State Department report has shown that the Chinese government has a motive to suppress Christian activity that does not run in line with the Communist Party. And is there a means? They certainly have a means. There's closed-circuit cameras on every corner in China. Well, for example, there's no evidence in the record that in this particular province, like there's no particular evidence of anything involving a client or involving this province as to what would happen to someone who preached in the streets, right? Or am I missing something in the record? Well, I would respectfully disagree because there is a letter from his sister that indicated that she was detained and warned to stop going to underground churches. I know, but that was in 2010. There's no indication anything happened to her. She continued to practice her religious activities for years after that, right? No, Your Honor. She stopped going to underground churches and only practiced at home in the secrecy of her home. My client, the petitioner, has testified and was found credible when he said, I, as a Christian, have a responsibility to go out on the streets and preach the gospel. But what he really said is he's going to pray loudly? Yes. And that there might be greedy or brainwashed people who would turn him in. I mean, that seems highly speculative, doesn't it? Not really because the state... The loudness of his prayer at home and the motives of people around him are enough to bank on the Chinese government learning about his faith? Your Honor, the Chinese government has always used neighbors and spies to rat out their neighbors, whether it's the family planning laws that are no longer in effect about unwanted pregnancies or religion. What you're saying is right, then. What you're saying is that anybody who is asserting that they are now a Christian can't be sent back to China because the Chinese government will figure it out one way or another. There's no burden to show anything because we can just take judicial notice of the fact that the Chinese government will find it out. Your Honor, the court has an opportunity, the immigration court has an opportunity to determine the sincerity of a practitioner's belief and whether or not they are actually practicing here in the United States on a consistent, a regular basis. Do they have witnesses? Whether or not the Chinese government is going to find out about it. That's what the agency went off on, right? Well, you first have to prove that you're a credible Christian. And then the second question is, will the Chinese government find out about it? Well, how could they not find out about it when they have laws that are countrywide that says if you go to an unregistered church, if you spread the gospel in public, it is a violation of the law. You discussed this at the first case today. So anybody who credibly says I'm going to pray loudly or I want to preach somewhere in the streets gets to remain in the United States because of that? I'm hesitant to say that because, let's be honest, if I say that, the image of millions of Chinese people coming here and saying they're Christian is going to flood your mind. And that's going to prejudice my client. That's all we have here. No, what we have here is an individual who was found to be credible by an immigration judge and the government who did not oppose the credibility finding, who has testified that as a Christian, he will continue the activities he does here in the United States, go out in public, spread the gospel, go to underground churches. He alone is what is in front of the court today. And he alone has established a reasonable possibility. The canary has died. Okay? There's no question, will religious people who go out in public be harmed? That's not a question. All right. Well, you've reserved a minute for rebuttal. We'll now hear from Mr. Robbins. May it please the court. My name is Jonathan Robbins here on behalf of the Attorney General. Good morning to all of you. The key question before the court today is whether the record compels reversal of the agency's denial of petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture. And the agency, the short answer to that question is no. The record does not compel reversal. And the agency here reasonably determined that the petitioner did not establish an objectively reasonable, well-founded fear of future persecution in China on account of his religious activities. Now, the petitioner submitted not a whole lot of evidence with respect to his claim. If you look at the testimony about what he claims will happen to him in the future, his testimony basically adds up to about two pages worth of transcript where he says that he practices his religion and that he's afraid that the Chinese government is going to do something and discover that. He acknowledges that the Chinese government is not aware of him and hasn't had no past interest in him, that they are not currently aware of his practice of Christianity. So his entire claim is based on speculation that they will discover this in the future and persecute him. Well, he testified about what he intends to do. He does. When he goes back. And the IJ believed him. So it's speculative. That shipsail with the IJ's conclusion that he has these legitimate concerns. Well, there's a difference between the petitioner subjectively believing that he's going to be harmed and what the objectable reasonableness of the evidence actually is. And that's where the petitioner's claim falls short. I don't question his subjective credibility, but I do question whether he faces an objectively reasonable... The IJ did not really explain why it was unlikely or not reasonably possible that someone who preached openly in the streets of China would not be subject to persecution. There was no explanation. And you can point me to it. Judge Sullivan referenced something that was in the record about, that he testified about greedy people who report me. But there wasn't really an explanation. The IJ didn't say, you know, he said he's going to preach publicly, but we don't believe the Chinese government is going to find out about him because of facts. I'll grant you the agency decisions in that respect are sparse. But very often what happens is you have a sparse decision from the agency sometimes because the petitioner's own claim is sparse. Generally, when the courts have admonished the board for not giving enough analysis... I mean, we have sparse presentations to us all the time. We try to, you know, we feel duty-bound to explain our reasoning. Well... That's what we get the big bucks for. Well, look, the standard of review for this court to be able to reverse the agency is the record would have to compel a conclusion contrary to that which the board found. I understand that. The issue, though, is how the IJ... why the IJ reached this conclusion after he found out... after he determined that Mrs. Ng's testimony was correct. Well, just to be clear, it's the board decision that's on review before the court. And the board explained and specifically cited to a case that talked about being too speculative, not being sufficient to meet the burden of proof. Now, when you take a look at the evidence that the petitioner presented in this case, I think probably his strongest piece of evidence is the letter that he submitted from his sister. That was a letter where the sister claimed that she had been a practicing Christian since 1998. And the time of this hearing was 2018. So that's a 20-year span. And during that time... And he also claimed that this... He was similarly situated to his sister. If you read the letter from his sister, she also talks about how the government was concerned with her proselytizing. She was apparently detained by authorities for several days and they tried to get her to write a guarantee letter, which was a promise not to proselytize. So a similar concern to what the petitioner is suggesting here. And their response, when she refused to sign that letter and didn't concede to their demands, was to release her. So that evidence that they submitted isn't really salient to demonstrating... Suppose he said, I don't want to go back to China because I'm Jewish and I think I would be persecuted. Or I don't want to go back to my home province because I'm a Muslim and I know what's happened to Muslims back home, back in my area. Ajay determines he's credible. Well, that determination is based to a great extent on speculation about future harm. But why wouldn't that be sufficient? I'm out of time. May I answer your question? Because I'm in the red? Well, that all depends on an assessment of whether you've presented objectively reasonable evidence to support your subjective belief of harm. Now, if you take a look at the background country conditions evidence, there's a lot of mixed evidence. We know that there are 90 million adherents of Christianity in China. That's a lot of people. And not all of them face persecution. Certainly there's evidence that the Chinese government seeks to regulate religion. They do engage in lots of violations. There are lots of anecdotal reports of situations where their regulation is veered into the territory of persecution. We also know that there's uneven enforcement from province to province. Very little of the petitioner's evidence in this case even references his home province. There's only three or four references to his home province. And so there's not any objectively reasonable evidence here to support his subjective belief that he would be harmed. All we're left with is a claim that, well, I think they're going to discover me even though they've had no interest with me in the past. And I do think it's reasonable for an adjudicator with that type of scant evidence to say that an objectively reasonable fear of persecution has not been established. I see that I'm out of time. I'm happy to answer any other questions if Your Honors would like. All right. Thank you, Mr. Robbins. Thank you very much for your time, Your Honors. Mr. Dierman, you have a minute before the bell. The Religious Affairs Regulation that was part of the record states it explicitly bans unregistered groups from teaching about religion and mandates increased oversight of religious gatherings. Article 73, Paragraph 4 of this law makes it illegal to organize or preside over unapproved religious activities held outside of religious government-approved churches. There is no speculation of what's going to happen to a person who claims to be a Christian and goes back to China and openly practices and spreads the gospel. But by that logic, then, as Judge Bianco said, anybody who says, I'm going back and I'm going to profess my faith on a street corner is basically not going to be removable, right? If they can prove to an immigration judge that they are truly sincere about their religious practice... No, but I mean, I guess, you keep coming back to sincerity, but it seems to me your argument is that the Chinese government will find out about this. They know everything that happens on every corner in the country even though it's over a billion people. That seems to be what you're saying. It is, Judge, but before we get there, we have to first prove sincerity that this person is a true Christian believer. But I don't think that the IJ or the agency denied this based on his... No, that's correct. Once he's established his credibility, then the question is, will he be discovered? Is there a reasonable possibility that if he goes on the street and spreads the gospel, will the Chinese government learn of him? Right, and so... The judge never addressed that. Well, but it seems to me the burden is on your client to show that they would find out. Right? I mean, it's not a terribly high burden, but you have to provide something. That there's a reasonable possibility that they would find out. That's a 10% chance under Codoza-Fonseca. 10% chance that they'll find out. What is there in the record that in that province that someone who goes on the street... Counselor admitted there's three or four... He said there's... There's three or four examples of it. And this Court, and the judges before me today have said, in denying this type of claim, there's nothing in the record, there's not one piece of evidence in the record that mentions this province. Well, there is at least one that mentioned this province. And if that's what you're saying was true, it must hold true for what I'm saying. I think we're proving a different thing. I mean, the issue is whether or not there's a reason to believe that the Chinese government will find out about it. The fact that they persecuted somebody in that province at some point doesn't mean that they will find out about this particular person. True. No. It means if they find out, we know what's going to happen to them. So the question is will they find out? And my argument is there is a reasonable possibility. Thank you very much for hearing us today. Thank you both. We will reserve decision.